UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                          Case No. 23-10569-RAM

MIAMI JET TOURS, INC.,                          Chapter 11

      Debtor.
_____/

## **PLAN OF REORGANIZATION OF MIAMI JET TOURS, INC.**

**Submitted on April 25, 2023 by:**

ZACH B. SHELOMITH, ESQ.
zbs@lss.law
Florida Bar No. 0122548
LSS LAW
Attorneys for the Debtor
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

## <u>TABLE OF CONTENTS</u>

**Article I – Summary and Background**………………………………..………………………3

**Article II – Definitions**………………………………………………………..………………..4

**Article III - Treatment of Administrative Expense Claims and Priority Tax Claims**………7

**Article IV - Classification and Treatment of Claims and Interests Under the Plan**………...…7

**Article V – Allowance and Disallowance of Claims**…………………………………..……11

**Article VI – Provisions for Executory Contracts and Unexpired Leases**……………………11

**Article VII – Means for Implementation of the Plan**……………………………………..…12

**Article VIII – Discharge and Effect of Confirmation**…………………………………...……12

**Article IX – Other Provisions**……………………………………………………………..13

## <u>EXHIBITS</u>

**Exhibit "A" – Liquidation Analysis**

**Exhibit "B" – Projected Financial Information**

**Exhibit "C" – List of Creditors to be Paid Pursuant to the Plan**

# ARTICLE I
## SUMMARY AND BACKGROUND

1.01     Introduction.  This is the Plan of Reorganization (the "Plan") under Subchapter V of Chapter 11 of the Bankruptcy Code of Miami Jet Tours, Inc. (the "Debtor").  Creditors will receive payment from the Debtor from the cash flow of the Debtor's operations for a period of 5 years.

This Plan provides for 1 class of priority claims, 6 classes of secured claims, 1 class of general unsecured claims and 1 class of equity security holders.  General unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately 2.5830 cents on the dollar.  This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Article IV of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

1.02     Description and History of the Debtor's Business.  The Debtor is a transportation company, specializing in private transportation for small and large groups, pre and post cruise transfers, corporate and sporting events, concerts, school trips, churches, weddings and customized transportation needs.  The Debtor was incorporated in 2000 and its sole owner is Rafael Mulkay, who is also the president of the Debtor.

The Debtor's business was severely impacted by the COVID-19 pandemic, as its business is largely dependent on the hospitality industry.  Prior to the pandemic, the Debtor owned 12 tour buses.  The majority of those tour buses were either repossessed or returned, resulting in large potential deficiency obligation(s) owed to the various secured lenders on those tour buses.  These obligation(s) led to lawsuit(s) being filed against the Debtor.  The Debtor is currently operating with 4 tour buses.  The Debtor also provides services to its customers in contracting with other owner(s) of tour bus(es) and derives income from such commissions.

Creditors have filed claims in this bankruptcy proceeding totaling $2,905,367.83.  After deducting claims that the Debtor believes are objectionable, and after reclassifying certain claims to priority and/or secured status, the Debtor estimates that the total amount of allowed general unsecured claims is **$2,322,904.30**.  By this Plan, the Debtor will be restructuring these obligations, such that the Debtor can remain viable as a going concern.

1.03     Liquidation Analysis.  To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached to the Plan as **Exhibit "A"**.

The estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's property.  The liquidation value of the Debtor's assets as of the date of the filing of this Plan is $0.00.  The Debtor's Initial Schedules and Statement of Financial Affairs was filed on February 8, 2023 [ECF No. 37].  The Debtor obtained a third-party appraisal of each of the 4 tour buses referenced above, and the appraised values are contained within the liquidation analysis.

After deducting estimated Chapter 11 administrative expenses, as well as anticipated Chapter 7 administrative expenses, it was calculated that unsecured creditors would receive a total of $0.00 if this case were converted to a Chapter 7 liquidation. As such, creditors are receiving in this Plan more than what they would receive in a hypothetical Chapter 7 proceeding.

1.04    Ability to Make Future Plan Payments. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. To that end, the Debtor has attached projected financial information as **Exhibit "B"**. The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by 11 U.S.C. § 1191(d)) for the period described in 11 U.S.C. § 1191(c)(2) (after payment of all amounts under this Plan, as well as all operating expenses) of $35,662.00. The final Plan payment is expected to be paid on June 30, 2028. **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

1.05    Projected Recovery of Avoidable Transfers. The Debtor has analyzed its books and records and does not believe that any avoidable transfers exist that would generate a recovery for the bankruptcy estate. To the extent that any creditors and third parties were listed on the Debtor's Statement of Financial Affairs # 3 [ECF No. 37], such payments were either payments to perfected lien creditors or payments made in the ordinary course of business or financial affairs of the Debtor and the respective transferees. As such, the Debtor does not intend to pursue preference, fraudulent conveyance or other avoidable actions under Chapter 5 of the Bankruptcy Code.

## ARTICLE II
## DEFINITIONS

All capitalized terms in this Plan shall have the meanings ascribed to them herein. Any capitalized term used in this Plan that is not defined herein or elsewhere in this Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.01    Administrative Claim - means any Claim constituting a cost or expense of administration of the above-referenced bankruptcy case under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the bankruptcy estate and of operating the business of the Debtor; (ii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iii) compensation or reimbursement of expenses of professionals to the extent allowed by 11 U.S.C. §§ 330(a) or 331, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

2.02    Allow, Allowed, Allowance (or words of similar meaning) - mean with respect to a Claim or equity interest against the Debtor that is: (a) either (i) scheduled by the Debtor in its schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed, if a holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court, or (ii) asserted in the above-referenced bankruptcy case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court, or (ii) that has

otherwise been allowed by a Final Order or pursuant to the Plan. An Allowed Claim includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of the Plan.

2.03    Assets - mean any and all property of the bankruptcy estate as defined under and included in 11 U.S.C. § 541(a), including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature.

2.04    Avoidance Actions – means any and all actions and rights to recover or avoid transfers or to avoid any lien under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, 11 U.S.C. §§ 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553, and applicable state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

2.05    Bankruptcy Code - means Title 11 of the United States Code, which governs the Chapter 11 case of the Debtor.

2.06    Bankruptcy Court or Court – mean the United States Bankruptcy Court for the Southern District of Florida.

2.07    Bankruptcy Rules - means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

2.08    Claim - means any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

2.09    Claimant – means the Holder of a Claim.

2.010    Class - means a group of Claims or Equity Interests described in Article IV of this Plan.

2.011    Confirmation Date - means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

2.012    Confirmation Order - means an Order of the Bankruptcy Court confirming the provisions of the Plan pursuant to 11 U.S.C. § 1191.

2.013    Confirmation Hearing - means the hearing at which the Bankruptcy Court confirms the Plan.

2.014    Disputed Claim - means any Claim designated as disputed, contingent or unliquidated in the Debtor's schedules filed in connection with the Chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Order has been entered. Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan or ordered by the Court.

2.015   <u>Distribution</u> - means the distribution of cash or other property, as the case may be, in accordance with this Plan.

2.016   <u>Distribution Address</u> - means the address for a holder of an Allowed Claim as set forth in a proof of claim, as amended or supplemented. If no proof of claim is filed with respect to a particular Claim, such defined term means the address as set forth in the Debtors' Schedules.

2.017   <u>Effective Date</u> – means the date upon which the Confirmation Order becomes a Final Order.

2.018   <u>Final Order</u> - means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under 11 U.S.C. § 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.019   <u>First Payment Date</u> – means the first day of the first month after the Effective Date of the Plan.

2.020   <u>Holder</u> - means the legal or beneficial Holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

2.021   <u>Impaired</u> - means an Allowed Claim that is impaired within the meaning of 11 U.S.C. § 1124.

2.022   <u>Petition Date</u> – means January 25, 2023.

2.023   <u>Priority Claim</u> - means a Claim entitled to priority under 11 U.S.C. §§ 507(a)(3) - (7).

2.024   <u>Priority Tax Claim</u> - means a Claim entitled to priority under 11 U.S.C. § 507(a)(8).

2.025   <u>Secured Claim</u> - means a Claim that is (i) secured by a valid and perfected lien on property in which the Debtor's estate has an interest, but only to the extent of the value of the claimant's interest in the estate's interest in such property as determined pursuant to 11 U.S.C. § 506(a), or (b) subject to setoff under 11 U.S.C. § 553, but only to the extent of the amount subject to setoff, as determined pursuant to 11 U.S.C. § 553.

2.026   <u>Subchapter V Trustee</u> – means the individual serving in this bankruptcy proceeding as trustee pursuant to 11 U.S.C. § 1183.

2.027   <u>Undersecured Claim</u> - means the amount of a prepetition Secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured.

2.028   Unsecured Claim - means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND PRIORITY TAX CLAIMS

3.01   Unclassified Claims.  Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes.  However, treatment of any administrative expense claims that are not paid in full on the Effective Date of this Plan is set forth below.

3.02   Administrative Expense Claims.   Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid as set forth herein, which is consistent with 11 U.S.C. § 1191(e).  If not otherwise specifically provided for herein, any other allowed administrative expense claims will be paid in full, plus statutory interest if applicable, over 60 months from the First Payment Date, in 20 equal quarterly payments, which will begin on the First Payment Date, and continue on the first day of every quarter thereafter.  Administrative Expense Claims shall be filed on or before the deadline as set by the Court or otherwise pursuant to the Bankruptcy Code.

3.03   Priority Tax Claims.   Each holder of an allowed priority tax claim will be paid in full on the First Payment Date.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS AND
## INTERESTS UNDER THE PLAN

4.01   Classified Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Claims | Unimpaired | Class 1 is comprised of all Priority Claims.  No undisputed, noncontingent and/or liquidated Priority Claims have been scheduled by the Debtor.  One (1) Priority Claim has been filed, which is Claim # 3 of the Internal Revenue Service, for estimated 2022 and 2023 taxes.  The Debtor does not believe that it has any tax liability for the years 2022 or 2023.  However, the Debtor shall pay any federal income (or other) taxes for the year 2022 (and thereafter) in the normal course, when such taxes become due and owing.  To the extent that any such amount is due and owing as of the Effective Date, then such amount shall be paid in full on the First Payment Date.<br><br>In the event that it is determined by the Court that any *other* allowed Priority Claims do exist, then each holder of a Class 1 Priority Claim will be paid in full, plus statutory interest if applicable, over 60 months from the First Payment Date, in 20 equal quarterly payments, which will begin on the First Payment Date, and continue on the first day of every quarter thereafter. |
| Class 2 – Secured Claim of Northeast Bank (First Priority Blanket Lien) (Claim # 11) | Unimpaired | Class 2, the Secured Claim of Northeast Bank, f/k/a Independence Bank ("Northeast Bank"), is unimpaired by this Plan.  Northeast Bank has a blanket lien on essentially all assets of the Debtor, by virtue of a UCC-1 Financing Statement filed on October 15, 2018. |

| | | |
|---|---|---|
| **Total claim amount: $82,942.18 (secured = $82,942.18; general unsecured = $0.00)** | | This claim will be paid pursuant to the underlying loan document(s) executed by the Debtor and shall not be modified by virtue of this Plan. Any adequate protection payments made by the Debtor during the pendency of this case shall be applied retroactively to the underlying loan payment(s). Northeast Bank shall retain its lien on the Debtor's property until such time as the debt is fully satisfied. |
| Class 3 – Secured Claim of U.S. Small Business Administration (Second Priority Blanket Lien) (Claim # 1) **Total claim amount: $120,655.67 (secured = $120,655.67; general unsecured = $0.00)** | Unimpaired | Class 3, the Secured Claim of the U.S. Small Business Administration ("SBA"), is unimpaired by this Plan. The SBA has a blanket lien on essentially all assets of the Debtor, by virtue of a UCC-1 Financing Statement filed on May 31, 2020. This claim will be paid pursuant to the underlying loan document(s) executed by the Debtor and shall not be modified by virtue of this Plan. Any adequate protection payments made by the Debtor during the pendency of this case shall be applied retroactively to the underlying loan payment(s). The SBA shall retain its lien on the Debtor's property until such time as the debt is fully satisfied. |
| Class 4 – Secured Claim of Webster Bank, f/k/a Sterling National Bank (Lien on 2016 Temsa TS-35E motor coach) (Claim # 8) **Total claim amount: $164,539.00 (secured = $100,000.00; general unsecured = $64,539.00)** | Impaired | Class 4, the Secured Claim of Webster Bank, f/k/a Sterling National Bank ("Webster Bank"), is impaired by this Plan. This claim is secured by a lien on a 2016 Temsa TS-35E motor coach (VIN: NLTRPPY79G1000383) (the "2016 Temsa"). The Debtor asserts that the value of the 2016 Temsa is $100,000.00. Accordingly, this claim shall be reclassified as an allowed secured claim in the amount of $100,000.00, and as an allowed general unsecured claim in the amount of $64,539.00. The secured claim will be paid at the rate of 8% over 3 years (36 months) from May 1, 2023, which will result in equal monthly principal and interest payments of $3,133.64, beginning on May 1, 2023, and continuing on the first day of every month thereafter. Payments shall be made to the address listed on Webster Bank's Proof of Claim, or such other address provided by Webster Bank to the Debtor's counsel. The Debtor has agreed to enter into a Loan Modification Agreement with Webster Bank, in accordance with its Plan treatment described herein. Any adequate protection payments paid to Webster Bank prior to April 30, 2023 shall be applied towards its Class 8 general unsecured claim. Any adequate protection payments paid to Webster Bank on or after May 1, 2023 (which payments shall increase to $3,133.64) shall be retroactively converted to amortizing payments towards Webster Bank's Class 4 Secured Claim under this Plan, upon such time as this Plan is confirmed (as long as the Confirmation Order is entered on or before September 1, 2023). Webster Bank shall be enjoined from collecting against the guarantor, Rafael Mulkay, as long as the Debtor remains current under the Plan payments to Webster Bank, as memorialized in a Loan Modification Agreement, and such guaranty claim shall be waived upon full payment of Webster Bank's Class 4 Secured Claim. Webster Bank will retain its lien on the 2016 Temsa, to the extent of its secured claim, during the time that payments are made. The allowed undersecured claim, in the amount of $64,539.00, will be paid in accordance with Class 8 general unsecured creditors below. |
| Class 5 – Secured Claim of Key Equipment | Impaired | Class 5, the Secured Claim of Key Equipment Finance, a division of KeyBank N.A. ("Key Equipment Finance"), is impaired by this |

| | | |
|---|---|---|
| Finance (Lien on 2014 Setra S417 motor coach) (Claim # 10)<br><br>**Total claim amount: $158,413.28 (secured = $80,000.00; general unsecured = $78,413.28)** | | Plan.  This claim is secured by a lien on a 2014 Setra S417 motor coach (VIN: WKKA57XH0E3010195) (the "2014 Setra").<br><br>The Debtor asserts that the underlying obligation between the Debtor and Key Equipment Finance (and/or its predecessor(s)) is not a true lease but instead a disguised security agreement.  The Debtor also asserts that the value of the 2014 Setra is $80,000.00. The Debtor intends on forthwith filing the appropriate motion to deem the underlying obligation a disguised security agreement and to value the 2014 Setra at $80,000.00 and bifurcate Key Equipment Finance's claim into secured and unsecured portions under 11 U.S.C. § 506.  Accordingly, this claim shall be reclassified as an allowed secured claim in the amount of $80,000.00, and as an allowed general unsecured claim in the amount of $78,413.28.<br><br>The secured claim will be paid at the rate of 8% over 5 years (60 months) from the First Payment Date, which will result in equal monthly principal and interest payments of $1,622.11, beginning on the First Payment Date, and continuing on the first day of every month thereafter.  Payments shall be made to the address listed on Key Equipment Finance's Proof of Claim, or such other address provided by Key Equipment Finance to the Debtor's counsel.<br><br>Key Equipment Finance will retain its lien on the 2014 Setra, to the extent of its secured claim, during the time that payments are made. The allowed undersecured claim, in the amount of $78,413.28, will be paid in accordance with Class 8 general unsecured creditors below. |
| Class 6 – Secured Claim of Wells Fargo Equipment Finance, Inc. (Lien on 2015 Setra S417 motor coach) (Claim # 12)<br><br>**Total claim amount: $190,205.47 (secured = $85,000.00; general unsecured = $105,205.47)** | Impaired | Class 6, the Secured Claim of Wells Fargo Equipment Finance, Inc. ("Wells Fargo"), is impaired by this Plan.  This claim is secured by a lien on a 2015 Setra S417 motor coach (VIN: WKKA57XH1F3010210) (the "2015 Setra").<br><br>The Debtor asserts that the underlying obligation between the Debtor and Wells Fargo (and/or its predecessor(s)) is not a true lease but instead a disguised security agreement.  The Debtor also asserts that the value of the 2015 Setra is $85,000.00.  The Debtor intends on forthwith filing the appropriate motion to deem the underlying obligation a disguised security agreement and to value the 2015 Setra at $85,000.00 and bifurcate Wells Fargo's claim into secured and unsecured portions under 11 U.S.C. § 506. Accordingly, this claim shall be reclassified as an allowed secured claim in the amount of $85,000.00, and as an allowed general unsecured claim in the amount of $105,205.47.<br><br>The secured claim will be paid at the rate of 8% over 5 years (60 months) from the First Payment Date, which will result in equal monthly principal and interest payments of $1,723.49, beginning on the First Payment Date, and continuing on the first day of every month thereafter.  Payments shall be made to the address listed on Wells Fargo's Proof of Claim, or such other address provided by Wells Fargo to the Debtor's counsel.<br><br>Wells Fargo will retain its lien on the 2015 Setra, to the extent of its secured claim, during the time that payments are made.  The allowed undersecured claim, in the amount of $105,205.47, will be paid in accordance with Class 8 general unsecured creditors below. |
| Class 7 – Secured Claim of Wells Fargo Equipment Finance, Inc. | Impaired | Class 7, the Secured Claim of Wells Fargo, is impaired by this Plan. This claim is secured by a lien on a 2017 Setra S417 motor coach (VIN: WKKA574H6H3010274) (the "2017 Setra"). |

| | | |
|---|---|---|
| (Lien on 2017 Setra S417 motor coach) (Claim # 13) **Total claim amount: $199,413.87 (secured = $120,000.00; general unsecured = $79,413.87)** | | The Debtor asserts that the underlying obligation between the Debtor and Wells Fargo (and/or its predecessor(s)) is not a true lease but instead a disguised security agreement. The Debtor also asserts that the value of the 2017 Setra is $120,000.00. The Debtor intends on forthwith filing the appropriate motion to deem the underlying obligation a disguised security agreement and to value the 2017 Setra at $120,000.00 and bifurcate Wells Fargo's claim into secured and unsecured portions under 11 U.S.C. § 506. Accordingly, this claim shall be reclassified as an allowed secured claim in the amount of $120,000.00, and as an allowed general unsecured claim in the amount of $79,413.87. |
| | | The secured claim will be paid at the rate of 8% over 5 years (60 months) from the First Payment Date, which will result in equal monthly principal and interest payments of $2,433.17, beginning on the First Payment Date, and continuing on the first day of every month thereafter. Payments shall be made to the address listed on Wells Fargo's Proof of Claim, or such other address provided by Wells Fargo to the Debtor's counsel. |
| | | Wells Fargo will retain its lien on the 2017 Setra, to the extent of its secured claim, during the time that payments are made. The allowed undersecured claim, in the amount of $79,413.87, will be paid in accordance with Class 8 general unsecured creditors below. |
| Class 8 - General Unsecured Creditors **Total Estimated Allowed General Unsecured Claims: $2,322,904.30** | Impaired | Class 8 consists of all allowed general unsecured claims, including any undersecured claims. The Class 8 Creditors shall share *pro rata* in a total distribution in the amount of $60,000.00. |
| | | Any allowed general unsecured claimant scheduled to receive a total distribution of $500.00 or less shall be paid in a lump sum on the First Payment Date. The Debtor estimates that the lump sum payment(s) will total $174.62. |
| | | Any allowed general unsecured claimants scheduled to receive a total distribution of more than $500.00 shall receive payment over 5 years (60 months), in 20 quarterly payments totaling $2,985.45 per payment, with the first payment due on the First Payment Date and continuing on the first day of every quarter (i.e. every three months from the First Payment Date) thereafter. |
| | | The estimated Class 8 general unsecured creditors to be paid under this Plan (as well as a payment schedule) are set forth in the attached **Exhibit "C"**. Unsecured creditors will be receiving a distribution of approximately 2.5830% of their allowed claim(s), which is an amount in excess of what claimants would receive in a hypothetical Chapter 7 proceeding, in which case such claimants would receive 0.00%, as set forth in Exhibit "A". |
| Class 9 - Equity Security Holders of the Debtor | Impaired | Class 9 consists of all allowed equity interests in the Debtor, which includes interest in any share of preferred stock, common stock or other instruments evidencing an ownership interest in the Debtor. |
| | | All Equity Security Holders of the Debtor will retain their interest(s) in the Debtor as such interest(s) existed prior to the Petition Date, with Rafael Mulkay retaining a 100% stock interest. |

4.02    Unclassified Claims and interests shall be treated as follows under this Plan:

| | |
|---|---|
| Administrative Professional Fees and Costs of Debtor's Attorneys<br><br>(LSS Law) | The administrative professional fees and costs of the Debtor's attorneys are anticipated to be $35,000.00.  LSS Law is holding the amount of $10,217.50 in its attorney trust account, as unused fee advance/retainer.  Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing.  The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan.  Such fees and costs (net of the unused fee advance/retainer) shall be paid in one lump sum due on the First Payment Date.  Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |
| Administrative Professional Fees and Costs of Debtor's Accountant<br><br>(Jose Escarpio) | The administrative professional fees and costs of the Debtor's accountant are anticipated to be $3,600.00.  Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing.  The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan.  Such fees and costs shall be paid in one lump sum due on the First Payment Date.  Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |
| Administrative Professional Fees and Costs of Subchapter V Trustee<br><br>(Soneet Kapila) | The administrative professional fees and costs of the Subchapter V Trustee are anticipated to be $10,000.00.  Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing.  The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan.  Such fees and costs shall be paid in one lump sum due on the First Payment Date.  Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order.

5.02    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and in compliance with Fed. R. Bankr. P. 9019.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumption of Executory Contracts and Unexpired Leases.  The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date:

a.    Lease between the Debtor (as lessee) and American Land of Opa Locka, LLC (as lessor) for the premises located at 12707 NW 42 Ave, Opa Locka, FL 33054 (as listed on Schedule "G").

b.    Sub-lease between the Debtor (as lessor) and Blue Lagoon Tours and Transportation Inc (as lessee) for the lease of certain of the tour buses, for insurance purposes only (as listed on Schedule "G").

c.      Lease between the Debtor (as lessee) and Bridgestone Americas Tire Operations, LLC (as lessor) for tires (as listed on Schedule "G").

d.      Lease between the Debtor (as lessee) and Canon Financial Services, Inc. (as lessor) for a leased printer and scanner (as listed on Schedule "G").

e.      Sub-lease between the Debtor (as lessee) and Escot Bus Lines, LLC (as lessor) for one office and six parking spaces located at 12707 NW 42nd Ave., Opa Locka, FL (as listed on Schedule "G").

6.02    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed above, or before the Confirmation Date, upon the Effective Date of this Plan.  <u>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Confirmation Date.</u>

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The means necessary for the implementation of this Plan include the Debtor's cash flow from operations for a period of 5 years.  The Debtor's financial projections are attached as Exhibit "B".  The Debtor's financial projections show that the Debtor will have sufficient cash over the life of the Plan to make the required Plan payments and operate its business.  The estimated cash on hand necessary as of the First Payment Date of this Plan is $100,000.00.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by 11 U.S.C. § 1191(d)) for a period of 5 years (after payment of all amounts under this Plan, as well as operating expenses) of $35,662.00.  To the extent that the Debtor performs consistent with such financial projections, then such disposable income will be utilized by the Debtor in the form of cash reserves, in order to ensure that the Debtor will have sufficient cash over the life of the Plan to not only make the required Plan payments, but operate its business without any concern of illiquidity.  To the extent that the Debtor underperforms, then the Debtor's officer(s) have agreed to defer or waive his/their salaries as necessary, in order to ensure that the Debtor can make the required Plan payments.

To the extent that the Debtor wishes to prepay any amounts due under this Plan, the Debtor reserves the right to do so without penalty.  The Debtor, as reorganized, will retain and will be re-vested in all property of the estate, excepting property which is to be sold or otherwise disposed of as provided herein and executory contracts which are rejected pursuant to this Plan.  The retained property shall be used by the Debtor in the ordinary course of its business.

## ARTICLE VIII
## DISCHARGE AND EFFECT OF CONFIRMATION

8.01    <u>Discharge</u>.  If this Plan is confirmed under 11 U.S.C. § 1191(a), then on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before the Confirmation Date, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in 11 U.S.C. § 1141(d)(6).  If this Plan is confirmed under 11 U.S.C. § 1191(b), then confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on

completion of all payments due within the first 3 years of this Plan, or as otherwise provided in 11 U.S.C. § 1192.

The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in 11 U.S.C. § 1192; or (ii) excepted from discharge under 11 U.S.C. § 523(a), if applicable, except as provided in Fed. R. Bankr. P. Rule 4007(c).

8.02    Vesting of Assets.  Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

8.03    Binding Effect.  Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtor and its respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

8.04    Injunction Against Interference with Plan.  Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

8.05    Other Effect(s) of Confirmation.  If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

## ARTICLE IX
## OTHER PROVISIONS

9.01    Disbursing Agent.  If this Plan is confirmed under 11 U.S.C. § 1191(a), then all Distributions hereunder shall be made by the Debtor, or such other individual or entity designated by the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.  If this Plan is confirmed under 11 U.S.C. § 1191(b), then all Distributions hereunder shall be made by the Subchapter V Trustee, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.  In such instance, the Debtor shall remit to the Subchapter V Trustee, on or before the 15th day of the month prior to the month in which each Plan payment is due, the appropriate amount(s) for the Subchapter V Trustee to remit to the respective creditor(s) under this Plan.

A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor.  If this Plan is confirmed under 11 U.S.C. § 1191(b), then the Debtor shall also pay all fees, costs and expenses of the Subchapter V Trustee in remitting such Distributions.  The Bankruptcy Court shall retain jurisdiction to hear any controversy relating to such fees, costs and expenses.

9.02    Subchapter V Trustee.  If this Plan is confirmed under 11 U.S.C. § 1191(a), then the service of the Subchapter V Trustee shall terminate when this Plan has been substantially consummated.  The Debtor shall file with the Court and serve on the Subchapter V Trustee notice

of such substantial consummation not later than 14 days after the Plan is substantially consummated. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the service of the Subchapter V Trustee shall terminate upon such time that the last Distribution check is negotiated.

9.03    Default of Plan Payment(s). Unless otherwise specifically set forth above, in the event of any default by the Debtor of any payment required by ¶¶ 4.01 or 4.02 above, the Claimant (or the Subchapter V Trustee, as the case may be) shall provide the Debtor with notice of such default, by electronic mail to the Debtor's attorney, Zach B. Shelomith, Esq. (at zbs@lss.law) and by U.S. Mail to Zach B. Shelomith, Esq., 2699 Stirling Rd # C401, Fort Lauderdale, FL 33312 (the "Default Notice"). The Debtor shall be afforded thirty (30) days from the date of receipt by the Debtor's counsel of such Default Notice to cure such default (the "Cure Period"), or to seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193. In the event that the Debtor does not cure a default or otherwise seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193, within the Cure Period, which modification is subsequently approved by the Court, then the Debtor shall be deemed in Default of this Plan.

Pursuant to 11 U.S.C. § 1191(c)(3)(B), the condition that this Plan be fair and equitable with respect to each class of claims or interests includes, without limitation, the requirement that the Plan include "appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made". As such, if this Plan is confirmed under 11 U.S.C. § 1191(b), then in the event that the Debtor is in Default of this Plan, the Subchapter V Trustee shall provide all creditors and equity interest holders with notice of such Plan Default. In such instance, the remedies of any Claimant are limited to the remedies set forth in this paragraph. In the event of a Plan Default, the Debtor shall sell all of its tangible personal property (the "Sale"), and remit the proceeds of such Sale to the Holders of Allowed Claims. The Debtor shall have 120 days after the date of a Plan Default to effectuate the Sale or otherwise resolve such Plan Default to the satisfaction of the Claimant(s) and/or the Subchapter V Trustee. The Sale shall be conducted by a licensed auctioneer and the Debtor shall account for all proceeds of the Sale by providing such notice to all creditors and equity interest holders. After deducting any expenses directly associated with the Sale, the proceeds of the Sale shall be distributed as follows: (1) first, to any Claimants with valid Secured Claims against such personal property, in the order and priority as set forth pursuant to Florida law; and (2) second, in accordance with 11 U.S.C. § 726. The Sale and the distribution of the Sale proceeds shall be conducted by the Debtor without the necessity of further order of the Court. After receiving the appropriate proceeds from the Sale, each Claimant shall have no further claim against the Debtor. In the event of a Plan Default, in lieu of the Debtor's sale of such assets, Class 4, 5, 6 and 7 Secured Creditors may request that the Debtor turn over the subject collateral within thirty (30) days after the Debtor is in Default of this Plan, and the Debtor shall be required to turn over such collateral.

If this Plan is confirmed under 11 U.S.C. § 1191(a), then in the event that the Debtor is in Default of this Plan, then Claimants shall be entitled to any and all remedies available under applicable law, to collect the Distribution that each Claimant was entitled to under this Plan. In such case, the exclusive jurisdiction to enforce such Defaults under this Plan shall be in the Circuit Court in and for Miami-Dade County, Florida.

9.04    Reservation of Right to Modify Plan Post-Confirmation. The Debtor expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan, as long as such modification is in accordance with 11 U.S.C. § 1193, and as long as the Court confirms such modified plan, after notice and a hearing.

9.05    <u>Post-Petition Interest on Claims</u>.  Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim, unless otherwise specifically set forth in ¶¶ 4.01 or 4.02 above.

9.06    <u>Delivery of Distributions and Undeliverable or Returned Distributions</u>.  Subject to Fed. R. Bank. P. 9010, all Distributions to any Holder of an Allowed Claim shall be made at the Distribution Address.  In the event that any Distribution to any Holder is returned as an "Undeliverable or Returned Distribution", then no further Distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder, without interest.  An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Debtor or not; (b) returned to the Debtor because the Claimant cannot locate an account number belonging to the Debtor, despite the Debtor's reasonable diligence in providing the Claimant with the bankruptcy case number, account number and his social security number; (c) returned to the Debtor because the Claimant is no longer operating and has not provided the Debtor or the Court with any assignment information; or (d) returned to the Debtor because the Claimant indicates in writing that the Claimant does not wish to receive any Distribution under this Plan and therefore waives any right to payment.

All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made. Thereafter, the amount represented by such Undeliverable or Returned Distribution shall be permanently forfeited to the Debtor.  At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtor.

9.07    <u>Time Bar to Cash Payments</u>.  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be permanently forfeited to the Debtor.  At such time, any Claim in respect of such voided check shall be discharged and forever barred.

9.08    <u>Severability</u>.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.09    <u>Binding Effect</u>.    The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

9.010    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.011    <u>Controlling Effect</u>.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.012 <u>Corporate Governance</u>. Equity interests of the Debtor shall be treated as set forth in ¶ 4.01 of this Plan. The Reorganized Debtor's president shall be Rafael Mulkay.

9.013 <u>Post-Confirmation Operation of Business</u>. Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code. The Debtor shall be entitled to retain and compensate professionals without the necessity of further approval of the Court. Except as set forth in this Plan concerning objections to claims, the Debtor may also settle or compromise any claims without Court approval.

This Plan of Reorganization is dated April 25, 2023 and is hereby approved by the undersigned.

By: Rafael Mulkay, as President of
Miami Jet Tours, Inc.

Submitted by:

**Zach B. Shelomith, Esq.**
**Florida Bar No.: 0122548**
**LSS Law**
2699 Stirling Rd # C401
Ft. Lauderdale, FL 33312
Tel. No.: 954-920-5355
Fax No.: 954-920-5371
E-Mail: zbs@lss.law
*Attorneys for the Debtor*

# Exhibit "A" – Liquidation Analysis

| Exhibit A - Liquidation Analysis | |
|---|---|
| **Debtor's Estimated Liquidation Value of Assets** | |
| | |
| **Assets:** | **Value** |
| | |
| Debtor in Possession Bank Account | $125,000.00 |
| Accounts Receivable | $16,000.00 |
| 2015 Setra S417 Motor Coach | $85,000.00 |
| 2014 Setra S417 Motor Coach | $80,000.00 |
| 2017 Setra S417 Motor Coach | $120,000.00 |
| 2016 Temsa TS-35E Motor Coach | $100,000.00 |
| Other Tangible Personal Property | $7,800.00 |
| Intangible Assets | $926.00 |
| Avoidance Actions | $0.00 |
| | |
| **Total Assets at Liquidation Value:** | **$534,726.00** |
| | |
| **Less:** | |
| | |
| Secured creditor - 2015 Setra S417 Motor Coach | $85,000.00 |
| Secured creditor - 2014 Setra S417 Motor Coach | $80,000.00 |
| Secured creditor - 2017 Setra S417 Motor Coach | $120,000.00 |
| Secured creditor - 2016 Temsa TS-35E Motor Coach | $100,000.00 |
| First Priority Lien on All Assets - Northeast Bank | $82,942.18 |
| Second Priority Lien on All Assets - SBA | $120,655.67 |
| | |
| **Secured Claims Against Assets:** | **$588,597.85** |
| | |
| **Liquidation Value of Assets on Petition Date:** | **$0.00** |
| | |
| Est. Chapter 7 admin. expenses | $2,500.00 |
| Est. Chapter 11 admin. expenses | $40,000.00 |
| | |
| **Recovery for Unsecured Creditors in Chapter 7:** | **$0.00** |
| | |
| **Percentage of Claims Which Unsecured Creditors Would** | |
| **Receive or Retain in a Chapter 7 Liquidation:** | **0.0000%** |
| | |
| **Percentage of Claims Which Unsecured Creditors Would** | |
| **Receive or Retain under the Plan:** | **2.5830%** |

Exhibit "A"

# Exhibit "B" – Projected Financial Information

**MIAMI JET TOURS, INC**
PROJECTED CASH FLOW STATEMENT FOR
THE 12 MONTH PERIOD -- YEAR 1

**YEAR 1**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues, net of allowances | $128,000 | $130,000 | $130,000 | $134,000 | $142,000 | $120,000 | $128,000 | $130,000 | $130,000 | $134,000 | $142,000 | $120,000 | $1,568,000 |
| **Direct costs** | | | | | | | | | | | | | |
| Cost of fuel | 19,900 | 20,300 | 20,300 | 20,700 | 24,700 | 19,200 | 19,900 | 20,300 | 20,300 | 20,700 | 24,700 | 19,200 | 250,200 |
| Subcontracted drivers and tours | 48,760 | 49,350 | 49,350 | 51,530 | 52,890 | 46,400 | 48,760 | 49,350 | 49,350 | 50,530 | 52,890 | 46,400 | 595,560 |
| **Fleet payments on rented buses** | | | | | | | | | | | | | |
| Key Equipment Finance ($80K @8% / 60 Months) | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 19,464 |
| Sterling National (Webster) Bank (per settlement) | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 37,608 |
| **Fleet payments on owned buses** | | | | | | | | | | | | | |
| Wells Fargo - Loan #1 ($85K@8% / 60 months) | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 20,676 |
| Wells Fargo - Loan #2 ($120K@8% / 60 months) | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 29,196 |
| Insurances | 9,863 | 9,863 | 9,863 | 9,863 | 9,863 | 9,863 | 9,863 | 9,863 | 9,863 | 9,863 | 9,863 | 9,863 | 118,358 |
| Fleet repairs and other direct costs | 9,400 | 9,000 | 9,000 | 9,600 | 10,200 | 8,800 | 9,400 | 9,000 | 9,000 | 9,600 | 10,200 | 8,800 | 112,000 |
| **Total direct costs** | 96,835 | 97,425 | 97,425 | 100,605 | 106,565 | 93,175 | 96,835 | 97,425 | 97,425 | 99,605 | 106,565 | 93,175 | 1,183,062 |
| Gross profits | 31,165 | 32,575 | 32,575 | 33,395 | 35,435 | 26,825 | 31,165 | 32,575 | 32,575 | 34,395 | 35,435 | 26,825 | 384,938 |
| **Operating expenses** | | | | | | | | | | | | | |
| ADP - payroll services | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 1,140 |
| Accounting and bookkeeping services (regular) | | | | | | | 400 | 400 | 400 | 400 | 400 | 400 | 2,400 |
| Advertising | 350 | 350 | 350 | 380 | 380 | 380 | 350 | 350 | 350 | 380 | 380 | 380 | 4,380 |
| Auto & lease expenses | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 9,576 |
| Bank & credit card charges (merchant fees) | 920 | 960 | 960 | 1,000 | 1,400 | 980 | 920 | 960 | 960 | 1,000 | 1,400 | 980 | 12,440 |
| Class 9 - General unsecured creditors | 2,985 | | | 2,985 | | | 2,985 | | | 2,985 | | | 11,940 |
| Entertainment & promotion | 360 | 380 | 380 | 350 | 340 | 330 | 360 | 380 | 380 | 350 | 340 | 330 | 4,280 |
| Legal services - Bankruptcy Attorney | 25,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 25,000 |
| Legal services - Subchapter V Trustee fees | 7,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7,000 |
| Accounting fees - Bankruptcy related | 3,600 | | | | | | | | | | | | 3,600 |
| Licenses and taxes | 50 | 125 | 250 | 150 | 75 | 0 | 50 | 125 | 250 | 150 | 75 | 0 | 1,300 |
| Loan payment - SBA EIDL | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 8,772 |
| Loan payment - Northeast Bank (Independence Bank) | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 18,624 |
| Office expenses and supplies | 480 | 490 | 490 | 520 | 540 | 600 | 480 | 490 | 490 | 520 | 540 | 600 | 6,240 |
| Payroll (owners) | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 75,000 |
| Payroll - office | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| Payroll taxes & worksmen compensation | 1,004 | 1,004 | 1,004 | 1,004 | 1,004 | 1,004 | 1,049 | 1,049 | 1,049 | 1,049 | 1,049 | 1,049 | 12,317 |
| Permits & port charges | 860 | 890 | 890 | 920 | 960 | 820 | 860 | 890 | 890 | 920 | 960 | 820 | 10,680 |
| Rent | 5,581 | 5,581 | 5,581 | 5,581 | 5,581 | 5,581 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 88,008 |
| Repairs and maintenance (premises) | 375 | 350 | 360 | 350 | 350 | 350 | 375 | 350 | 360 | 350 | 350 | 350 | 4,270 |
| Telephone, internet & cellphones | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Travel | 300 | 300 | 300 | 400 | 300 | 200 | 300 | 300 | 300 | 400 | 300 | 200 | 3,600 |
| Various and others | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 21,600 |
| Total operating expenses | 63,371 | 24,936 | 25,071 | 28,146 | 25,436 | 24,751 | 32,222 | 29,387 | 29,522 | 32,597 | 29,887 | 29,202 | 374,527 |
| NET CASH FLOWS | ($32,206) | $7,639 | $7,504 | $5,249 | $9,999 | $2,074 | ($1,057) | $3,188 | $3,053 | $1,798 | $5,548 | ($2,377) | $10,411 |

**Cumulative cash balances :**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening balance | $100,000 | 67,794 | 75,434 | 82,938 | 88,187 | 98,187 | 100,261 | 99,204 | 102,391 | 105,444 | 107,241 | 112,789 |
| Net monthly changes | (32,206) | 7,639 | 7,504 | 5,249 | 9,999 | 2,074 | (1,057) | 3,188 | 3,053 | 1,798 | 5,548 | (2,377) |
| Ending period balance | $67,794 | $75,434 | $82,938 | $88,187 | $98,187 | $100,261 | $99,204 | $102,391 | $105,444 | $107,241 | $112,789 | $110,412 |

**Notes >**
- Income and expenses were based on prior historical data from the years 2022
  and the 1st quarter of 2023.
- Rent expense is for the parking of the 4 buses (yard). Rent will increase on the 6 month of year 1.
- Various and others  represents payments for an outside storage, equipment rental
  and trips related expenses in regards to subcontractors.
- Monthly bus payments have been adjusted to expected reductions
- The opening cash balance
- No allowance for corporate income taxes have been projected due to carry over losses from prior years.

**Prepared April 2023 by:**
Escarpio & Company, LLC (Accountants)
Miami, FL 33176

Exhibit "B"

**MIAMI JET TOURS, INC**
PROJECTED CASH FLOW STATEMENT FOR
THE 12 MONTH PERIOD -- YEAR 2

**YEAR 2**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues, net of allowances | $131,840 | $133,900 | $133,900 | $138,020 | $146,260 | $123,600 | $131,840 | $133,900 | $133,900 | $138,020 | $146,260 | $123,600 | $1,615,040 |
| **Direct costs** | | | | | | | | | | | | | |
| Cost of fuel | 20,320 | 20,720 | 20,720 | 21,120 | 24,700 | 19,620 | 19,900 | 20,720 | 20,300 | 21,120 | 25,120 | 19,620 | 253,980 |
| Subcontracted drivers and tours | 49,893 | 50,501 | 50,501 | 52,716 | 54,147 | 47,462 | 49,893 | 50,501 | 50,501 | 51,716 | 54,147 | 47,462 | 609,437 |
| **Fleet payments on rented buses** | | | | | | | | | | | | | |
| Key Equipment Finance ($80K @8% / 60 Months) | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 19,464 |
| Sterling National (Webster) Bank (per settlement) | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 37,608 |
| **Fleet payments on owned buses** | | | | | | | | | | | | | |
| Wells Fargo - Loan #1 ($85K@8% / 60 months) | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 20,676 |
| Wells Fargo - Loan #2 ($120K@8% / 60 months) | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 29,196 |
| Insurances | 10,363 | 10,363 | 10,363 | 10,363 | 10,363 | 10,363 | 10,363 | 10,363 | 10,363 | 10,363 | 10,363 | 10,363 | 124,358 |
| Fleet repairs and other direct costs | 9,700 | 9,300 | 9,300 | 9,900 | 10,500 | 9,100 | 9,700 | 9,300 | 9,300 | 9,900 | 10,500 | 9,100 | 115,600 |
| **Total direct costs** | 99,188 | 99,796 | 99,796 | 103,011 | 108,622 | 95,457 | 98,768 | 99,796 | 99,376 | 102,011 | 109,042 | 95,457 | 1,210,319 |
| Gross profits | 32,652 | 34,104 | 34,104 | 35,009 | 37,638 | 28,143 | 33,072 | 34,104 | 34,524 | 36,009 | 37,218 | 28,143 | 404,721 |
| **Operating expenses** | | | | | | | | | | | | | |
| ADP - payroll services | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 95 | 1,140 |
| Accounting and bookkeeping services (general) | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 5,400 |
| Advertising | 350 | 350 | 350 | 380 | 380 | 380 | 350 | 350 | 350 | 380 | 380 | 380 | 4,380 |
| Auto & lease expenses | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 9,576 |
| Bank & credit card charges (merchant fees) | 980 | 1,020 | 1,020 | 1,060 | 1,460 | 1,040 | 980 | 1,020 | 1,020 | 1,060 | 1,460 | 1,040 | 13,160 |
| Class 9 - General unsecured creditors | 2,985 | | | | 2,985 | | | | 2,985 | | | | 11,940 |
| Entertainment & promotion | 360 | 380 | 380 | 350 | 340 | 330 | 360 | 380 | 380 | 350 | 340 | 330 | 4,280 |
| Legal and professional services ( general) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Licenses and taxes | 50 | 125 | 250 | 150 | 75 | 0 | 50 | 125 | 250 | 150 | 75 | 0 | 1,300 |
| Loan payment - SBA EIDL | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 8,772 |
| Loan payment - Northeast Bank (Independence Bank) | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 18,624 |
| Office expenses and supplies | 480 | 490 | 490 | 520 | 540 | 600 | 480 | 490 | 490 | 520 | 540 | 600 | 6,240 |
| Payroll (owners) | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 87,600 |
| Payroll - office | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 3,200 | 38,400 |
| Payroll taxes & worksmen compensation | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,113 | 1,168 | 1,168 | 1,168 | 1,168 | 1,168 | 1,168 | 13,689 |
| Permits & port charges | 860 | 890 | 890 | 920 | 960 | 820 | 860 | 890 | 890 | 920 | 960 | 820 | 10,680 |
| Rent | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 109,044 |
| Repairs and maintenance (premises) | 375 | 350 | 360 | 350 | 350 | 350 | 375 | 350 | 360 | 350 | 350 | 350 | 4,270 |
| Telephone, internet & cellphones | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Travel | 300 | 300 | 300 | 400 | 300 | 200 | 300 | 300 | 300 | 400 | 300 | 200 | 3,600 |
| Various and others | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 26,400 |
| **Total operating expenses** | 34,696 | 31,861 | 31,996 | 35,071 | 32,361 | 31,676 | 35,351 | 32,516 | 35,726 | 33,016 | 33,016 | 32,331 | 399,255 |
| NET CASH FLOWS | ($2,044) | $2,243 | $2,108 | ($62) | $5,277 | ($3,533) | ($2,279) | $1,588 | $1,873 | $283 | $4,202 | ($4,188) | $5,466 |

**Cumulative cash balances :**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening balance | $110,412 | 108,367 | 110,610 | 112,718 | 112,656 | 117,933 | 114,399 | 112,120 | 113,708 | 115,581 | 115,864 | 120,066 |
| Net monthly changes | (2,044) | 2,243 | 2,108 | (62) | 5,277 | (3,533) | (2,279) | 1,588 | 1,873 | 283 | 4,202 | (4,188) |
| Ending period balance | $108,367 | $110,610 | $112,718 | $112,656 | $117,933 | $114,399 | $112,120 | $113,708 | $115,581 | $115,864 | $120,066 | $115,878 |

**Notes>**
- The Company expects a 3% growth in income over its previous years, and also increases in
  its direct costs like fuel, subcontracted tour operators, etc.
- Rent expense is for the parking of the 4 buses (yard).
- Various and others  represents payments for an outside storage, equipment rental
  and trips related expenses in regards to subcontractors.
- Monthly bus payments have been adjusted to expected reductions.
- No allowance for corporate income taxes have been projected due to carry over losses from prior years.

**Prepared April 2023 by:**
Escarpio & Company, LLC (Accountants)
Miami, FL 33176

Exhibit "B"

**MIAMI JET TOURS, INC**
PROJECTED CASH FLOW STATEMENT FOR
THE 12 MONTH PERIOD -- YEAR 3

**YEAR 3**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues, net of allowances | $134,477 | $136,578 | $136,578 | $140,780 | $149,185 | $129,780 | $134,477 | $136,578 | $136,578 | $140,780 | $149,185 | $126,073 | $1,651,050 |
| **Direct costs** | | | | | | | | | | | | | |
| Cost of fuel | 20,820 | 21,220 | 21,220 | 21,620 | 25,200 | 19,620 | 20,400 | 21,220 | 20,800 | 21,620 | 25,620 | 20,120 | 259,480 |
| Subcontracted drivers and tours | 51,871 | 52,491 | 52,491 | 54,730 | 56,210 | 50,485 | 51,871 | 52,491 | 52,491 | 53,730 | 56,210 | 49,392 | 634,460 |
| **Fleet payments on rented buses** | | | | | | | | | | | | | |
| Key Equipment Finance ($80K @8% / 60 Months) | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 19,464 |
| Sterling National (Webster) Bank (per settlement) | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 3,134 | 37,608 |
| **Fleet payments on owned buses** | | | | | | | | | | | | | |
| Wells Fargo - Loan #1 ($85K@8% / 60 months) | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 20,676 |
| Wells Fargo - Loan #2 ($120K@8% / 60 months) | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 29,196 |
| Insurances | 10,715 | 10,715 | 10,715 | 10,715 | 10,715 | 10,715 | 10,715 | 10,715 | 10,715 | 10,715 | 10,715 | 10,715 | 128,580 |
| Fleet repairs and other direct costs | 9,700 | 9,300 | 9,300 | 9,900 | 10,500 | 9,100 | 9,700 | 9,300 | 9,300 | 9,900 | 10,500 | 9,100 | 115,600 |
| **Total direct costs** | 102,018 | 102,638 | 102,638 | 105,877 | 111,537 | 98,832 | 101,598 | 102,638 | 102,218 | 104,877 | 111,957 | 98,239 | 1,245,064 |
| **Gross profits** | 32,459 | 33,940 | 33,940 | 34,903 | 37,649 | 30,948 | 32,879 | 33,940 | 34,360 | 35,903 | 37,229 | 27,834 | 405,986 |
| **Operating expenses** | | | | | | | | | | | | | |
| ADP - payroll services | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Accounting and bookeeping services (general) | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 400 | 400 | 400 | 400 | 400 | 5,100 |
| Advertising | 350 | 350 | 350 | 380 | 380 | 380 | 350 | 350 | 350 | 380 | 380 | 380 | 4,380 |
| Auto & lease expenses | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 9,576 |
| Bank & credit card charges (merchant fees) | 920 | 960 | 960 | 1,000 | 1,400 | 980 | 920 | 960 | 960 | 1,000 | 1,400 | 980 | 12,440 |
| Class 9 - General unsecured creditors | | | 2,985 | | | 2,985 | | | 2,985 | | | 2,985 | 11,940 |
| Entertainment & promotion | 360 | 380 | 380 | 350 | 440 | 330 | 360 | 380 | 380 | 350 | 340 | 330 | 4,280 |
| Legal and professional services (general) | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 15,600 |
| Licenses and taxes | 50 | 125 | 250 | 150 | 75 | 0 | 50 | 125 | 250 | 150 | 75 | 0 | 1,300 |
| Loan payment - SBA EIDL | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 8,772 |
| Loan payment - Northeast Bank (Independence Bank) | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 18,624 |
| Office expenses and supplies | 480 | 490 | 490 | 520 | 540 | 480 | 490 | 490 | 520 | 540 | 520 | 600 | 6,240 |
| Payroll (owners) | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 91,200 |
| Payroll - office | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| Payroll taxes & worksmen compensation | 1,196 | 1,196 | 1,196 | 1,196 | 1,196 | 1,196 | 1,196 | 1,196 | 1,196 | 1,196 | 1,196 | 1,196 | 14,348 |
| Permits & port charges | 860 | 890 | 890 | 920 | 960 | 820 | 860 | 890 | 890 | 920 | 960 | 820 | 10,680 |
| Rent | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 109,044 |
| Repairs and maintenance (premises) | 375 | 350 | 360 | 350 | 350 | 350 | 375 | 350 | 360 | 350 | 350 | 350 | 4,270 |
| Telephone, internet & cellphones | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Travel | 300 | 300 | 300 | 400 | 300 | 200 | 300 | 300 | 300 | 400 | 300 | 200 | 3,600 |
| Various and others | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 26,400 |
| **Total operating expenses** | 32,739 | 32,889 | 36,009 | 33,114 | 33,389 | 35,689 | 32,689 | 32,839 | 35,959 | 33,064 | 33,339 | 35,639 | 407,354 |
| **NET CASH FLOWS** | ($280) | $1,052 | ($2,068) | $1,790 | $4,260 | ($4,741) | $190 | $1,102 | ($1,598) | $2,840 | $3,890 | ($7,804) | ($1,368) |

**Cumulative cash balances :**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening balance | $115,878 | 115,598 | 116,650 | 114,582 | 116,371 | 120,631 | 115,891 | 116,081 | 117,183 | 115,585 | 118,424 | 122,314 |
| Net monthly changes | (280) | 1,052 | (2,068) | 1,790 | 4,260 | (4,741) | 190 | 1,102 | (1,598) | 2,840 | 3,890 | (7,804) |
| Ending period balance | $115,598 | $116,650 | $114,582 | $116,371 | $120,631 | $115,891 | $116,081 | $117,183 | $115,585 | $118,424 | $122,314 | $114,510 |

**Notes>**
- The Company expects a 2% growth in income over its previous years, and also increases in
  its direct costs like fuel, subcontracted tour operators, etc.
- Rent expense is for the parking of the 4 buses (yard).
- Various and others represents payments for an outside storage, equipment rental
  and trips related expenses in regards to subcontractors.
- Monthly bus payments have been adjusted to expected reductions.
- No allowance for corporate income taxes have been projected due to carry over losses from prior years.
  second half of year 3

**Prepared April 2023 by:**
Escarpio & Company, LLC (Accountants)
Miami, FL 33176

**MIAMI JET TOURS, INC**
PROJECTED CASH FLOW STATEMENT FOR
THE 12 MONTH PERIOD -- YEAR 4

**YEAR 4**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues, net of allowances | $135,822 | $137,944 | $137,944 | $142,188 | $150,677 | $131,078 | $135,822 | $137,944 | $137,944 | $142,188 | $150,677 | $127,334 | $1,667,560 |
| **Direct costs** | | | | | | | | | | | | | |
| Cost of fuel | 21,220 | 21,620 | 21,620 | 22,020 | 25,600 | 20,020 | 20,800 | 21,620 | 21,200 | 22,020 | 26,020 | 20,520 | 264,280 |
| Subcontracted drivers and tours | 53,121 | 53,741 | 53,741 | 55,980 | 57,460 | 51,735 | 53,121 | 53,741 | 53,741 | 54,980 | 57,460 | 50,642 | 649,460 |
| **Fleet payments on rented buses** | | | | | | | | | | | | | |
| Key Equipment Finance ($80K @8% / 60 Months) | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 19,464 |
| New bus equipment lease | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| **Fleet payments on owned buses** | | | | | | | | | | | | | |
| Wells Fargo - Loan #1 ($85K@8% / 60 months) | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 20,676 |
| Wells Fargo - Loan #2 ($120K@8% / 60 months) | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 29,196 |
| Insurances | 11,015 | 11,015 | 11,015 | 11,015 | 11,015 | 11,015 | 11,015 | 11,015 | 11,015 | 11,015 | 11,015 | 11,015 | 132,180 |
| Fleet repairs and other direct costs | 10,050 | 9,650 | 9,650 | 10,250 | 10,850 | 9,450 | 10,050 | 9,650 | 9,650 | 10,250 | 10,850 | 9,450 | 119,800 |
| **Total direct costs** | 106,184 | 106,804 | 106,804 | 110,043 | 115,703 | 102,998 | 105,764 | 106,804 | 106,384 | 109,043 | 116,123 | 102,405 | 1,295,056 |
| **Gross profits** | 29,638 | 31,140 | 31,140 | 32,145 | 34,974 | 28,080 | 30,058 | 31,140 | 31,560 | 33,145 | 34,554 | 24,929 | 372,505 |
| **Operating expenses** | | | | | | | | | | | | | |
| ADP - payroll services | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 1,320 |
| Accounting and bookeeping services | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 5,400 |
| Advertising | 350 | 350 | 350 | 380 | 380 | 380 | 350 | 350 | 350 | 380 | 380 | 380 | 4,380 |
| Auto & lease expenses | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 9,576 |
| Bank & credit card charges (merchant fees) | 920 | 960 | 960 | 1,000 | 1,400 | 980 | 920 | 960 | 960 | 1,000 | 1,400 | 980 | 12,440 |
| Class 9 - General unsecured creditors | | | 2,985 | | | 2,985 | | | 2,985 | | | 2,985 | 11,940 |
| Entertainment & promotion | 360 | 380 | 380 | 340 | 330 | 360 | 360 | 380 | 350 | 340 | 330 | | 4,280 |
| Legal and professional services | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 18,000 |
| Licenses and taxes | 50 | 125 | 250 | 150 | 75 | 0 | 50 | 125 | 250 | 150 | 75 | 0 | 1,300 |
| Loan payment - SBA EIDL | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 8,772 |
| Loan payment - Northeast Bank (Independence Bank) | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 18,624 |
| Office expenses and supplies | 480 | 490 | 490 | 520 | 540 | 600 | 480 | 490 | 490 | 520 | 540 | 600 | 6,240 |
| Payroll (owners) | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 91,200 |
| Payroll - office | 3,475 | 3,475 | 3,475 | 3,475 | 3,475 | 3,475 | 3,475 | 3,475 | 3,475 | 3,475 | 3,475 | 3,475 | 41,700 |
| Payroll taxes & worksmen compensation | 1,193 | 1,193 | 1,193 | 1,193 | 1,193 | 1,193 | 1,193 | 1,193 | 1,193 | 1,193 | 1,193 | 1,193 | 14,320 |
| Permits & port charges | 860 | 890 | 890 | 920 | 960 | 820 | 860 | 890 | 890 | 920 | 960 | 820 | 10,680 |
| Rent | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 109,044 |
| Repairs and maintenance (premises) | 375 | 350 | 360 | 350 | 350 | 375 | 375 | 350 | 360 | 350 | 350 | 350 | 4,270 |
| Telephone, internet & cellphones | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 6,480 |
| Travel | 300 | 300 | 300 | 400 | 300 | 200 | 300 | 300 | 300 | 400 | 300 | 200 | 3,600 |
| Various and others | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 27,600 |
| **Total operating expenses** | 33,031 | 33,181 | 36,301 | 33,406 | 33,681 | 35,981 | 33,031 | 33,181 | 36,301 | 33,406 | 33,681 | 35,981 | 411,166 |
| **NET CASH FLOWS** | ($3,393) | ($2,041) | ($5,161) | ($1,261) | $1,293 | ($7,902) | ($2,973) | ($2,041) | ($4,741) | ($261) | $873 | ($11,052) | ($38,662) |

**Cumulative cash balances :**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening balance | $114,510 | 111,117 | 109,075 | 103,914 | 102,653 | 103,946 | 96,044 | 93,071 | 91,030 | 86,289 | 86,027 | 86,900 |
| Net monthly changes | (3,393) | (2,041) | (5,161) | (1,261) | 1,293 | (7,902) | (2,973) | (2,041) | (4,741) | (261) | 873 | (11,052) |
| Ending period balance | $111,117 | $109,075 | $103,914 | $102,653 | $103,946 | $96,044 | $93,071 | $91,030 | $86,289 | $86,027 | $86,900 | $75,848 |

**Accountants notes>**
- The Company expects a 1% growth in income over its previous years, and also increases in
  'its direct costs like fuel, subcontracted tour operators, etc.
- Rent expense is for the parking of the 4 buses (yard).
- Various and others  represents payments for an outside storage, equipment rental
  and trips related expenses in regards to subcontractors.
- Monthly bus payments have been adjusted to expected reductions.
- No allowance for corporate income taxes have been projected due to carry over losses from prior years.
- Owners compensation is variable and dependent upon possible profits. It has been reduced on the 4th year.

**Prepared April 2023 by:**
Escarpio & Company, LLC (Accountants)
Miami, FL 33176

**MIAMI JET TOURS, INC**
PROJECTED CASH FLOW STATEMENT FOR
THE 12 MONTH PERIOD -- YEAR 5

**YEAR 5**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues, net of allowances | $138,538 | $140,703 | $140,703 | $145,032 | $153,691 | $133,699 | $138,538 | $140,703 | $140,703 | $145,032 | $153,691 | $129,880 | $1,700,912 |
| **Direct costs** | | | | | | | | | | | | | |
| Cost of fuel | 21,620 | 22,020 | 22,020 | 22,420 | 26,000 | 20,420 | 21,200 | 22,020 | 21,600 | 22,420 | 26,420 | 20,920 | 269,080 |
| Subcontracted drivers and tours | 54,371 | 54,991 | 54,991 | 57,230 | 58,710 | 52,985 | 54,371 | 54,991 | 54,991 | 56,230 | 58,710 | 51,892 | 664,460 |
| **Fleet payments on rented buses** | | | | | | | | | | | | | |
| Key Equipment Finance ($80K @8% / 60 Months) | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 1,622 | 19,464 |
| New bus equipment lease | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| **Fleet payments on owned buses** | | | | | | | | | | | | | |
| Wells Fargo - Loan #1 ($85K@8% / 60 months) | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 1,723 | 20,676 |
| Wells Fargo - Loan #2 ($120K@8% / 60 months) | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 2,433 | 29,196 |
| Insurances | 11,265 | 11,265 | 11,265 | 11,265 | 11,265 | 11,265 | 11,265 | 11,265 | 11,265 | 11,265 | 11,265 | 11,265 | 135,180 |
| Fleet repairs and other direct costs | 10,450 | 10,050 | 10,050 | 10,650 | 11,250 | 9,850 | 10,450 | 10,050 | 10,050 | 10,650 | 11,250 | 9,850 | 124,600 |
| **Total direct costs** | 108,484 | 109,104 | 109,104 | 112,343 | 118,003 | 105,298 | 108,064 | 109,104 | 108,684 | 111,343 | 118,423 | 104,705 | 1,322,656 |
| **Gross profits** | 30,054 | 31,599 | 31,599 | 32,689 | 35,688 | 28,401 | 30,474 | 31,599 | 32,019 | 33,689 | 35,268 | 25,176 | 378,256 |
| **Operating expenses** | | | | | | | | | | | | | |
| ADP - payroll services | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Accounting and bookkeeping services | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 5,400 |
| Advertising | 350 | 350 | 350 | 380 | 380 | 380 | 350 | 350 | 350 | 380 | 380 | 380 | 4,380 |
| Auto & lease expenses | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 798 | 9,576 |
| Bank & credit card charges (merchant fees) | 920 | 960 | 960 | 1,000 | 1,400 | 980 | 920 | 960 | 960 | 1,000 | 1,400 | 980 | 12,440 |
| Class 9 - General unsecured creditors | | | 2,985 | | | 2,985 | | | 2,985 | | | 2,985 | 11,940 |
| Entertainment & promotion | 360 | 380 | 380 | 350 | 340 | 330 | 360 | 380 | 380 | 350 | 340 | 330 | 4,280 |
| Legal and professional services (general) | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 19,200 |
| Licenses and taxes | 75 | 150 | 275 | 175 | 100 | 0 | 75 | 150 | 275 | 175 | 100 | 0 | 1,550 |
| Loan payment - SBA EIDL | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Loan payment - Northeast Bank (Independence Bank) | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 | 18,624 |
| Office expenses and supplies | 480 | 490 | 490 | 520 | 540 | 600 | 480 | 490 | 490 | 520 | 540 | 600 | 6,240 |
| Payroll (owners) | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 91,200 |
| Payroll - office | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 43,200 |
| Payroll taxes & worksmen compensation | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 14,458 |
| Permits & port charges | 860 | 890 | 890 | 920 | 960 | 820 | 860 | 890 | 890 | 920 | 960 | 820 | 10,680 |
| Rent | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 9,087 | 109,044 |
| Repairs and maintenance (premises) | 375 | 350 | 360 | 350 | 350 | 375 | 350 | 360 | 350 | 350 | 350 | 350 | 4,270 |
| Telephone, internet & cellphones | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 530 | 6,360 |
| Travel | 300 | 300 | 300 | 400 | 300 | 200 | 300 | 300 | 300 | 400 | 300 | 200 | 3,600 |
| Various and others | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 28,800 |
| **Total operating expenses** | 33,642 | 33,792 | 36,912 | 34,017 | 34,292 | 36,567 | 33,642 | 33,792 | 36,912 | 34,017 | 34,292 | 36,567 | 418,442 |
| **NET  CASH FLOWS** | ($3,587) | ($2,193) | ($5,313) | ($1,328) | 1,396 | ($8,166) | ($3,167) | ($2,193) | ($4,893) | ($328) | 976 | ($11,391) | ($40,186) |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cumulative cash balances :** | | | | | | | | | | | | | |
| Opening balance | $75,848 | 72,261 | 70,068 | 64,756 | 63,427 | 64,824 | 56,658 | 53,491 | 51,298 | 46,405 | 46,077 | 47,053 | |
| Net monthly changes | (3,587) | (2,193) | (5,313) | (1,328) | 1,396 | (8,166) | (3,167) | (2,193) | (4,893) | (328) | 976 | (11,391) | |
| Ending period balance | $72,261 | $70,068 | $64,756 | $63,427 | $64,824 | $56,658 | $53,491 | $51,298 | $46,405 | $46,077 | $47,053 | $35,662 | |

**Accountants notes>**
- The Company expects a 2% growth in income over its previous years, and also increases in
  its direct costs like fuel, subcontracted tour operators, etc.
- Rent expense is for the parking of the 4 buses (yard).
- Various and others  represents payments for an outside storage, equipment rental
  and trips related expenses in regards to subcontractors.
- Monthly bus payments have been adjusted to expected reductions.
- No allowance for corporate income taxes have been projected due to carry over losses from prior years.
- Owners compensation is variable and dependent upon possible profits. It has been adjusted in the 4th year.

**Prepared April 2023 by:**
Escarpio & Company, LLC (Accountants)
Miami, FL 33176

Exhibit "B"

# Exhibit "C" – List of Creditors to be Paid Pursuant to the Plan

**Miami Jet Tours, Inc. - List of General Unsecured Creditors to be Paid Pursuant to Plan**

**Class 8 General Unsecured Creditors:**

| Class | Claim # | Name of Creditor | Amount of Claim | Proposed Distribution | Initial Payment | Quarterly Payments | Comments |
|---|---|---|---|---|---|---|---|
| 8 | 2 | American Express National Bank | $42.00 | $1.08 | $0.65 | $0.00 | Unsecured claim - Credit Card # 4009 |
| 8 | 4 | Signature Financial, LLC | $311,829.99 | $8,054.49 | $0.00 | $402.72 | Deficiency claim on returned motor coach |
| 8 | 5 | Signature Financial, LLC | $349,045.76 | $9,015.76 | $0.00 | $450.79 | Deficiency claim on returned motor coach |
| 8 | 6 | Signature Financial, LLC | $460,659.89 | $11,898.72 | $0.00 | $594.94 | Deficiency claim on returned motor coach |
| 8 | 7 | Signature Financial, LLC | $466,280.18 | $12,043.89 | $0.00 | $602.19 | Deficiency claim on returned motor coach |
| 8 | 8 | Webster Bank | $64,539.00 | $1,667.03 | $0.00 | $83.35 | Unsecured portion of claim on 2016 Temsa TS-35E motor coach |
| 8 | 9 | Cellco Partnership d/b/a Verizon Wireless | $1,176.42 | $30.39 | $18.23 | $0.00 | Unsecured claim - Utility Acct # 0002 |
| 8 | 10 | Key Equipment Finance | $78,413.28 | $2,025.39 | $0.00 | $101.27 | Unsecured portion of claim on 2014 Setra S417 Motor Coach |
| 8 | 12 | Wells Fargo Equipment Finance, Inc. | $105,205.47 | $2,717.43 | $0.00 | $135.87 | Unsecured portion of claim on 2015 Setra S417 Motor Coach |
| 8 | 13 | Wells Fargo Equipment Finance, Inc. | $79,413.87 | $2,051.24 | $0.00 | $102.56 | Unsecured portion of claim on 2017 Setra S417 Motor Coach |
| 8 | 14 | M&T Capital and Leasing Corporation | $202,591.39 | $5,232.88 | $0.00 | $261.64 | Deficiency claim on returned motor coach |
| 8 | 15 | Western Equipment Finance | $193,658.05 | $5,002.14 | $0.00 | $250.11 | Deficiency claim on returned motor coach |
| 8 | SCH | WEX Bank | $10,049.00 | $259.56 | $155.74 | $0.00 | Trade debt |
| | | **Total Undisputed Unsecured Claims** | **$2,322,904.30** | **$60,000.00** | **$174.62** | **$2,985.45** | |
| | | **Distribution Percentage** | **2.5830%** | | | | |

**Disposition of Other Claims Not Listed Above:**

| Class | Claim # | Name of Creditor | Amount of Claim | Proposed Disposition |
|---|---|---|---|---|
| 3 | 1 | U.S. Small Business Administration | $120,655.67 | Class 3 Claim - Not Impaired |
| 1 | 3 | Internal Revenue Service | $3,914.68 | Class 1 Claim - Not Impaired |
| 4 | 8 | Webster Bank | $100,000.00 | Class 4 Claim - Secured portion of claim on 2016 Temsa TS-35E motor coach |
| 5 | 10 | Key Equipment Finance | $80,000.00 | Class 5 Claim - Secured portion of claim on 2014 Setra S417 Motor Coach |
| 2 | 11 | Northeast Bank | $82,942.18 | Class 2 Claim - Not Impaired |
| 6 | 12 | Wells Fargo Equipment Finance, Inc. | $85,000.00 | Class 6 Claim - Secured portion of claim on 2015 Setra S417 Motor Coach |
| 7 | 13 | Wells Fargo Equipment Finance, Inc. | $120,000.00 | Class 7 Claim - Secured portion of claim on 2017 Setra S417 Motor Coach |

Exhibit "C"